# Micou *v.* Moses Brothers.

*Bill in Equity by Judgment Creditor, to subject · Equitable Assets, under charge of Fraud.*

1. *Receiver; appointment before answer.*—The practice is settled with us, in accordance with the modern English practice, that a receiver may be appointed before answer filed, when the exigency of the particular case is clearly shown by affidavits.

2. *Same; affidavits, and how rebutted.*—The practice is well established, that *ex-parte* affidavits may be received in support of an application for the appointment of a receiver, and counter affidavits in opposition to it; but the court "is unwilling to sanction the practice, which seems to have been followed in this case, of permitting a voluminous deposition, containing irrelevant matter, to be introduced for the purpose of contradicting the affidavit of the deponent." If it was necessary to rebut or impeach the statements of the affidavit, it should have been done by an extract of the pertinent matter from the deposition, embodied in an explanatory affidavit, or attached thereto as an exhibit.

3. *Same; who may ask, and is entitled to.*—A judgment creditor of an insolvent debtor, having an execution returned "No property found," and seeking by his bill to reach and subject the debtor's alleged interest· in certain crops raised on a plantation carried on in the name of another

[Micou v. Moses Brothers.]

person, shows such a lien on or title to the crops as authorizes him to ask the appointment of a receiver; and the proof showing very clearly that the property is being rapidly disposed of by irresponsible parties, under the management of the debtor, so that its loss is imminent, and the charge of fraud being strongly supported by all the circumstances of the case, a *prima facie* case for the appointment of a receiver is made out.

4. *Same; want of parties, or of notice.*—That some of the parties in interest are not before the court, and that others have had no notice of the application, is no valid objection to the appointment of a receiver; since the receiver holds for the parties in interest, and his appointment does not affect any existing rights, nor prejudice the rights of persons before the court, who may at any time propound their interest.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JOHN A. FOSTER.

GUNTER & BLAKEY, for appellants.

TROY & TOMPKINS, *contra.*

SOMERVILLE, J.—The present appeal is from an interlocutory order of the chancellor appointing a receiver, and made at the instance of the complainants, who are judgment creditors of B. H. Micou. It fully appears that, upon this judgment, there had been issue of execution, with return of "No property found;" and the purpose of the bill is to reach an equitable interest of Micou, which he is alleged to own in certain crops raised in Montgomery county, in the year 1882, on a plantation carried on in the name of one G. R. Micou.

The practice is settled in this State, in accordance with the modern English practice, that a receiver may be appointed before answer filed, where there is clear proof of the exigency of the particular case, shown by affidavits. If any other rule were allowed to prevail, the purpose designed by the application might very often be defeated by delay.— *Weis v. Goetter, Weil & Co.*, at present term (*ante*, p. 259); Kerr on Receivers, 136, and *note; Williamson v. Wilson*, 1 Bland, 422; *Bloodgood v. Clark*, 4 Paige, 577.

The statute requires the application for such an appointment to be made in writing. It may be made to the chancellor, either in term time, or in vacation, but to the register only in vacation. When made in vacation, reasonable notice of the time of such application, and the person to whom it will be submitted, is required to be given, or else good reason must be shown for the failure to do so.—Code, 1876, §§ 3881, 639.

The practice is also firmly established, that *ex-parte* affidavits may be introduced in support of the application; and counter-affidavits may be received in opposition to, and rebuttal of the statements upon which the application is predicated.

[Micou v. Moses Brothers.]

The proceedings in the present case seem to have in substantial accordance with these rules. We are not willing, however, to sanction the practice, which appears to have been followed in this case, of permitting a voluminous deposition of one of the affiants to be introduced, containing much irrelevant matter, for the purpose of contradicting his affidavit, on a single point, which was made in resistance of the application, when the same purpose could have been accomplished by an extract of the pertinent matter from such deposition, embodied in, or attached as an exhibit to an explanatory affidavit, thus fully and fairly presenting the matter of rebuttal desired to be introduced in evidence, by way of counter admission, or of impeachment. The record, however, discloses no objection to this on the part of the defendant in the court below.

If it be true that the defendant, Micou, owned an equitable interest in the crops, for the custody of which the present receivership is asked, the *lien or title* of the complainants is very clearly of such a character as to authorize the granting of their application, if there be no other objection which can be deemed fatal to it. They were judgment creditors, who had pursued their debtor to insolvency in a court of law, having an execution on their judgment returned unsatisfied; and the interest sought to be subjected was a mere equitable one, not liable to be sold under execution at law. In cases of this nature, the courts always lend a ready ear to applications for the appointment of a receiver.— *Weis v. Goetter, Weil & Co., supra; Osborn v. Heyer*, 2 Paige, 342; *Bloodgood v. Clark*, 4 *Ib.* 577; Kerr on Receivers, 58–59.

The whole object had in view, in the appointment of a receiver, is to provide for the safe custody of the property, pending the litigation which is to settle the conflicting claims of the parties litigant. The appointment can, of course, create no rights in the subject-matter of litigation, such a result being entirely foreign to its purpose. It can neither affect the question of title, nor involve any judicial determination of it. *Chase's case*, 1 Bland's Ch. 206; s. c., 17 Amer. Dec. 277; Mitford's Pl. 133. The exercise of the power must rest very largely within the sound legal discretion of the court, and should be brought into activity always with great caution and circumspection, especially when invoked against a party in possession under the legal title.—*Hughes v. Hatchett*, 55 Ala. 631; Kerr. on Receiv. 4, 115; *Briarfield Iron Works v. Foster*, 54 Ala. 622; *Ex parte Walker*, 25 Ala. 81.

No positive or unvarying rule can be laid down, to regulate such appointments in all cases. It has sometimes been said, that a receiver ought to be appointed only "to prevent fraud, save the subject of litigation from material injury, or rescue it

[Micou v. Moses Brothers.]

from threatened destruction."—*Baker v. Backus*, 32 Ill. 79; *Briarfield Iron Works v. Foster*, 54 Ala. 634, *supra*. By other authorities, the rule is said to be, that "there must be a legal or equitable right, reasonably clear and free from doubt, attended with danger of loss."—*Randle v. Carter*, 62 Ala. 95, 102; High on Receivers, §§ 55–59. In another leading case, often approved, it is asserted, that "fraud, or imminent danger, if the intermediate possession should not be taken by the court, must be clearly proved."—*Blondheim v. Moore*, 11 Md. 364; *Mays v. Rose*, 1 Freeman's Ch. (Miss.) 703.

The rule is stated by Mr. Kerr, in his work on Receivers, as follows: "If it appears to the court that the plaintiff has established a good *prima facie* equitable title, and that the property, the subject-matter of the suit, is in danger if left in the possession of the party against whom the receiver is prayed, until the hearing, or, at least, that there is reason to apprehend that the plaintiff will be in a worse situation if the appointment of a receiver be delayed, the appointment of a receiver is almost a matter of course."—Kerr on Receivers, 7–8.

We are of opinion that the complainants have established a good *prima facie* case for such an appointment. The fact is not denied, that the defendant, B. H. Micou, is utterly insolvent, and that complainants hold against him an unsatisfied judgment for a large amount, the validity of which is not disputed, and upon which they have had execution with a return of no property found. It further appears, from very clear proof, that the property in dispute is being rapidly disposed of by irresponsible parties under the management of Micou, so that its loss is imminent. Fraud is also charged against the judgment debtor, and the entire circumstances of the whole case, including his own admissions and testimony outside of the case, strongly support the imputation. The statements made in some of the affidavits are conflicting, and we refrain from any detailed discusion of them, as it is not our purpose to give any opinion upon the merits of the issues to be tried by the chancellor. It is enough to say, that they make out a *prima facie* case in favor of the complainants, based upon the probability that B. H. Micou has an equity in the subject-matter of litigation, which is liable to the satisfaction of the judgment which is the foundation of this suit; that he is utterly insolvent, and without the appointment of a receiver there is imminent danger of the entire property being speedily wasted and lost, to the serious injury of the complainants, who make this application.

In view of this *status* of the case, it is no valid objection to the appointment of a receiver, that some parties in interest are not before the court, and others have had no notice of the application. A receiver is always understood to hold for the par-

[Montg. So. Railway Co. v. Sayre.]

ties entitled. Persons holding paramount claims,who are not already before the court, are at liberty to come in at any time, and, on application, each will be examined *pro interesse suo;* and the receivership can be discharged, when the justice of the case shall authorize the making of such an order by the chancellor. If any other rule were allowed to prevail, parties holding mere legal titles, by absenting themselves from the jurisdiction of the court, could easily paralyze this right arm of its power, which is so often omnipotent in circumventing the artifices of fraud, and preventing irreparable damage.

The decree of the chancellor appointing a receiver, from which the present appeal was taken, must be affirmed.